IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-61825-CIV-HOPKINS

HPC US FUND 1, L.P., *et al.*,

    Plaintiffs,

v.

DALE WOOD, *et al.*,

    Defendants.

**DE LOS REYES DEFENDANTS' MOTION FOR DISQUALIFICATION OF PRESIDING JUDGE AND INCORPORATED MEMORANDUM OF LAW**

Defendants, De Los Reyes Properties, LLC and Rite Timing Services Corp. ("De Los Reyes Defendants"), through their designated representative, Gabriela Rodino, move for an Order of this Court disqualifying the presiding judge in this matter, Magistrate Judge James M. Hopkins, pursuant to 28 U.S.C. § 455(a) because Magistrate Judge Hopkins has conducted himself in a manner which would lead a reasonable person to have significant doubts as to his impartiality, and has caused these defendants to have significant doubts about his impartiality. In support, Defendants state:

**BACKGROUND**

Plaintiffs, HPC US Fund 1, L.P. and HPC US Fund 2, L.P. (collectively, "Plaintiffs"), are two limited partnerships formed to hold property interests in the United States for a fund composed of a number of German investors. Originally, the funds invested in mortgages, primarily subordinated mortgages, across the United States. Later, through foreclosure and other

means, several of the properties over which the funds held mortgages became titled in the name of Plaintiffs, or entities owned and controlled by them, which required the servicing of superior mortgages with fund assets.

Beginning on January 2010, Dale Wood ("Wood") was a manager and equity owner of Blackport Investment Group, LLC ("Blackport").[1] HPC Management and Blackport's relationship was governed by a management agreement ("the Management Agreement") which appointed Blackport as HPC Management's agent and property manager. The Management Agreement, among other powers and responsibilities, authorized Blackport to "acquire any real or personal property from, and to sell and convey any real or personal property to any Person as Blackport may determine."

Gabriel De Los Reyes was an individual who first became involved with Plaintiffs in August 2012 when he was introduced to Dale Wood, the manager of Blackport and then to Michael Pirgmann, Plaintiffs' representative and general manager. Mr. De Los Reyes was, at the time, interested in acquiring, for his own account, Plaintiffs' parent, HPC Capital GmbH[2] ("HPC Capital"). A Letter of Intent for this acquisition was executed by Mr. De Los Reyes on behalf of De Los Reyes Properties, LLC, and Dale Wood on behalf of HPC Capital on August 21, 2012.

Mr. De Los Reyes retained Joseph P. Klock, Jr., of the law firm now known as Rasco Klock Perez & Nieto, P.L. to assist him with the acquisition, as well as the law firm of White & Case LLP in Germany. The negotiations with HPC Capital were conducted with HPC Capital's attorneys, as well as with its principals, Michael Pirgmann, Andre Hoffmann, and HPC Capital's

---

[1] Blackport Investment Group, LLC was the manager of HPC Management, LLC. HPC Management, LLC was the managing member of HPC Fund Management, LLC. HPC Fund Management, LLC is the General Partner of both, HPC US Fund 1, L.P. and HPC US Fund 2, L.P.

[2] HPC Capital was a German limited liability company that managed approximately seven closed-end funds in the United States, including Plaintiffs who owned real-estate equities in the United States.

2

representative in the United States, Dale Wood. At all times during these negotiations Mr. Wood purported to act as Plaintiffs' representative, having been presented as such by Plaintiffs and their attorneys. Based on this and other representations, Mr. De Los Reyes and his attorneys, including Mr. Klock, reasonably believed that Dale Wood was fully authorized to negotiate on Plaintiffs' behalf.

During the course of the parties' negotiations, Mr. De Los Reyes learned of potential liability issues related to HPC Capital and was advised that in the absence of strong and very large dollar indemnifications on the part of Plaintiffs and their principals, that the investment was far too risky and liability-ridden. Because HPC Capital and its principals, Pirgmann and Hoffmann, would not agree to indemnify Mr. De Los Reyes for these risks, primarily relating to the fashion in which HPC Capital and its principals, Messrs. Pirgmann and Hoffmann, had carried out their duties to investors, Mr. De Los Reyes did not go forward with the purchase of HPC Capital. Mr. De Los Reyes did, however, purchase several property interests from Plaintiffs' portfolio through Blackport and Dale Wood. At issue in this litigation, is the Secret Lake property in Kissimmee, Florida, and the Commodore Plaza mortgage interest in Miami, Florida.

The Commodore mortgage interest and the Secret Lake property were conveyed to De Los Reyes Defendants in April and May 2013. Both transactions were governed by documents executed by Dale Wood on Plaintiffs' behalf, based upon representations and warranties that Mr. Wood had full authority to enter into the transaction of behalf of the Plaintiffs. The property interests were conveyed as a settlement of a dispute which arose from two failed real-estate transactions with the funds. Specifically, Mr. De Los Reyes had wired $965,000 to Plaintiffs for the purchase of a property in New Jersey and several mechanics' liens encumbering a property in

3

New York. The transactions failed because Plaintiffs did not make payments to creditors with the funds wired by Mr. De Los Reyes, as had been previously agreed. To settle claims for the return of that money to Mr. De Los Reyes, Mr. Wood, on Plaintiffs' behalf, conveyed the Commodore mortgage interest and the Secret Lake property.

### The Lawsuit and Temporary Restraining Order

On August 22, 2013, Plaintiffs filed this action and requested a temporary restraining order against Dale Wood and entities he alleged to be co-conspirators, as well as the De Los Reyes Defendants. Plaintiffs alleged that Mr. Wood and certain co-conspirators made unauthorized transfers of Plaintiffs' property interests to third parties, including the De Los Reyes Defendants. While the claims against Mr. Wood and his co-conspirators were for fraud, the claims against the De Los Reyes Defendants were for unjust enrichment, declaratory relief, and to quiet title.

On August 23, 2013, then United States District Judge and now United States Court of Appeals Circuit Judge Robin S. Rosenbaum granted Plaintiffs' request for a temporary restraining order, directing all of the defendants from taking actions with respect to property interests, which are or were held by Plaintiffs at any time. On the same date that the temporary restraining order was entered, Dale Wood executed a corrective quit claim deed for the Secret Lake property. The corrective quit claim deed was not a new conveyance, but instead corrected certain typographical errors contained in the May 2013 quitclaim deed.

On September 3, 2013, Judge Rosenbaum held an evidentiary hearing on Plaintiffs' request for a preliminary injunction. After a seven-hour hearing with a number of witnesses and thousands of pages of exhibits, this Court denied in total the motion for preliminary injunction against the De Los Reyes Group. Mr. Klock represented the De Los Reyes Defendants at that

hearing at which time both Mr. Pirgmann and Mr. de Los Reyes testified before then United States District Judge Rosenbaum.

On March 2, 2014, Mr. De Los Reyes passed away, and his daughter, Gabriela Rodino was substituted in his place, with attorney William "Bill" Brown undertaking the De Los Reyes Defendants' defense. On March 12, 2015, Mr. Brown also passed away, and Mr. Klock and his law firm assumed the De Los Reyes Defendants' defense at Ms. Rodino's request.

During one of the status conferences before Magistrate Judge Hopkins, Plaintiffs' counsel, Richard Petrovich, informed the Court that he expected to take seven days to try the matter with respect to Dale Wood and his co-conspirators and then needed three days for the De Los Reyes Defendants. Counsel for the De Los Reyes Defendants responded with a motion to bifurcate the trial as it was their concern that a jury would be influenced by seven days of fraud testimony against a *pro se* defendant, who could barely defend himself and would not testify, and that such would carry over to the equitable claims against De Los Reyes and cloud the jury's judgment. *See* D.E. 461.

This fear proved prescient as discussed below. But, to have the Court make an opinion as to the current defendants after sitting in a one-sided trial against a *pro se* defendant who did not testify flies in the face of objectivity especially, when the District Judge Rosenbaum, the only judge who heard evidence and argument of counsel from both sides, determined that Mr. Pirgmann had informed everyone that would listen that he was not running Blackport and did not have authority over the U.S. Funds:

> The Court:  You have to live and die with the decisions you make. If you decide I don't want to be identified any more as the manager of these funds, then, you know, there are certain consequences of doing that.

September 3, 2013 Preliminary Injunction Hearing, Tr. 230:5-8.[3]

---

[3] A copy of the preliminary injunction transcript is attached as **Exhibit A.**

In fact, counsel for the Plaintiffs pushed back and the Court would not have any of it. *Id.* at 226:33. And, while a Court has wide discretion in carrying over views from one proceeding to the next against a party, Magistrate Judge Hopkins's hostility, and predetermination of facts that flow from a one sided trial, with a *pro se* defendant who did not testify and introduced one exhibit, against parties not part of the original trial and not represented there is plainly wrong and is a cause for concern for the Defendants.[4]

### The Jury Trial Against Dale Wood and His Co-Conspirators

The claims against Dale Wood and the alleged co-conspirators were tried in a jury trial which commenced on February 8, 2016. The claims against the De Los Reyes Defendants were bifurcated due to the risk of unfair prejudice that would result if the equitable claims against the De Los Reyes Defendants were tried with the racketeering and fraud claims against Dale Wood. Neither of the de Los Reyes defendants were parties in the jury trial.

### Mr. Klock's Trial Testimony

During the trial, Dale Wood called Mr. Klock as a witness. Mr. Klock testified that he and his long-time client, Gabriel De Los Reyes, became familiar with Plaintiffs when Mr. De Los Reyes became interested in purchasing Plaintiffs' managing partner entity, HPC Capital. Klock, Tr. 4:7-13.[5] Mr. Klock further testified that Mr. De Los Reyes retained the highly-regarded international law firm, White & Case, LLP, to represent him in Germany. White & Case undertook due diligence inspection of HPC Capital records with Mr. de Los Reyes. Klock, Tr. 4:7-18: Mr. Klock testified that he reviewed the corporate documentation of Plaintiffs, as

---

[4] District Judge Rosenbaum was able to separate Dale Wood from the other Defendants after listening to both sides, and of course after argument of counsel and exhibits that would contradict what Plaintiffs have put forth. *Id.* at Tr. 232:21-22.

[5] A copy of Mr. Klock's trial testimony is attached as **Exhibit B.**

6

well as Blackport's management agreement with Plaintiffs, and that it was his understanding at the time that Blackport managed Plaintiffs, and that Dale Wood was authorized to act on Blackport's behalf. Klock, Tr. 6:4-24; 8:7-11.

On cross examination, Mr. Klock was asked whether there existed any documentation wherein Mr. De Los Reyes informed the principals of Plaintiffs' parent company that he had acquired properties from Plaintiffs' portfolio. Klock, Tr. 24:3-7. Mr. Klock responded that he believed he had, but was prevented by the Court from providing a complete answer. Klock, Tr. 24:7-10 ("MR. KLOCK.  I believe I have because -- Can I explain? THE COURT: No.").[6]

Mr. Klock also testified that at some point he had become aware that on August 23, 2013, Judge Rosenbaum had entered a temporary restraining order involving the properties, and that Mr. De Los Reyes at some point showed him a copy of the order. Klock, Tr. 24:22-25:4; 26:14-27:1. Mr. Klock further testified that he had not previously seen a copy of the Secret Lake corrective quitclaim deed (which was apparently executed by Dale Wood the same date that the temporary restraining order had been entered), nor did he know when it was prepared. Klock, Tr. 27:14-19; 28:17-19; 29:2-4. Mr. Klock had no knowledge of the corrective quitclaim deed until after the fact, and that he had no involvement in its preparation or the decision by Mr. Wood to issue that document. Mr. Klock also testified that **he did not advise** Mr. De Los Reyes with respect to that corrective quitclaim deed and reiterated the fact that Mr. De Los Reyes's signature was not on that document. Klock, Tr. 29:5-16.

Interestingly, during the trial testimony of Mr. Klock, without any objection prompted by

---

[6] It should be pointed out that the trial judge repeatedly interrupted Mr. Klock's testimony without objection by plaintiffs' attorneys, taking an active advocacy role against *pro se* Defendant Wood. On the other hand, when plaintiffs' counsel was cross examining Mr. Klock, the trial judge allowed broad inquiry well beyond the scope of direct, without any interruptions, while obviously the *pro se* defendant had no idea what to do or how to do it to stop the line of inquiry. The trial judge's selective interruptions on behalf of plaintiffs and complete failure to reign them in on cross demonstrated a clear bias on his part.

counsel for the Plaintiffs, Magistrate Judge Hopkins would intervene on his own and direct Mr. Klock to answer in a certain way or preclude Mr. Klock from answering certain questions despite the absence of an objection from any counsel sitting in the courtroom. *See Id*.

### The Jury Verdict Against Dale Wood and Co-Conspirators

The claims against Dale Wood and the alleged co-conspirators were tried in a jury trial which commenced on February 8, 2016. The claims against the De Los Reyes Defendants were bifurcated pursuant to Magistrate Judge Hopkins's Order dated June 30, 2015 [D.E. 474], because of the unfair prejudice that would result if the equitable claims against the De Los Reyes Defendants were tried with the racketeering and fraud claims against Dale Wood.

On February 17, 2016, a civil jury found that Dale Wood and his co-conspirators participated, either directly or indirectly, in the conduct or affairs of the enterprise through a pattern of racketeering activity and fraud. [D.E. 601]. The jury did not make any factual findings with respect to the De Los Reyes Defendants. [D.E. 601].[7]

### The Bench Trial Against the De Los Reyes Defendants and the Judge's Remarks

On February 18, 2016, the non-jury trial with respect to the equitable claims against the De Los Reyes Defendants commenced. Prior to the parties' opening statements, Magistrate Judge Hopkins made the following statements:[8]

> THE COURT: Right. And has there been any waiver of any potential conflicts of interest by your clients? . . . Mr. Klock had some involvement -- obviously I finished the jury trial, and I have come to appreciate a little bit better Mr. Klock's involvement in the underlying facts of this case. It seems to me that there is some potential liability on the part of Mr. Klock and because he was acting for the firm, by extension the firm.

Bench Trial Tr. 4:1-9.

---

[7] No surprising, of course, since they were not parties, nor was Mr. Klock or his law firm.

[8] A copy of the February 18, 2016 bench trial transcript is attached as **Exhibit C.**

8

> THE COURT: Yeah, well, that's an issue. I mean, let me ask the plaintiffs, do you foresee any potential liability on the part of Mr. Klock and/or the firm? Now, I'm talking about civil and/or criminal liability.
>
> PLAINTIFFS' COUNSEL: Well, Your Honor, we think one of the key facts of this case is a lack of, I guess, securitizing Mr. De Los Reyes's alleged investment in the properties and the fact that that money, I guess, didn't go for its intended uses. At the time it appeared that there was representation by Mr. Klock and his firm, so on some level, perhaps, I mean, I haven't really looked at it from what professional liability there may be. We just looked at it more of a lack of -- lack of protecting the client, lack of producing documents that you would expect to see.
>
> THE COURT: Let me see if I have the facts correct. At the same time De Los Reyes and Mr. Klock were involved in doing due diligence for the acquisition of HPC, properties were being transferred to De Los Reyes; is that correct? I mean, that's the allegation, correct?
>
> PLAINTIFFS' COUNSEL: Yes.

Bench Trial Tr. 4:20-5:14.

> THE COURT: And I believe the plaintiffs' position is that during that time period when Mr. Klock and De Los Reyes were doing their due diligence for the acquisition of HPC, there was no discussion by Mr. Klock and De Los Reyes about the transfers of the properties; is that correct?
>
> THE COURT: No discussion with HPC.
>
> PLAINTIFFS' COUNSEL: That's our understanding.
>
> THE COURT: Right. And I think it's -- it's not a big leap from there to -- and then there was testimony by Mr. Klock in cross examination of Mr. Klock at the first trial about his level of knowledge of the quit claim deed, the amended quit claim deed.
>
> PLAINTIFFS' COUNSEL: Yes, Your Honor. That was a line of questions that I had for Mr. Klock about that issue, and he testified, as I recall it, that he certainly was aware of the original transfers of the subject property, one being Secret Lake --

Bench Trial Tr. 6:3-21.

> THE COURT: I think it still calls into question his level of knowledge of not only what was going on during the due diligence and the transfers of the properties during the due diligence, but as well the amended quit claim deed on the same day that the TRO was entered considering the fact that he was

9

> representing De Los Reyes at that time. So I will say again it doesn't seem to me to be a big leap to say that Mr. Klock and the firm by virtue of that factual scenario has potential liability here. Would you agree?
>
> PLAINTIFFS' COUNSEL: Judge, I don't think it's a large leap to make. Obviously that's not been our focus. Our focus is at the moment, obviously, the arguments that are going to be before you, but I understand the Court's question with respect to, I guess, more of an issue on their side of the ledger with respect to . . .

Bench Trial Tr. 7:12-8:1.

> THE COURT: -- as to the firm, you know, I view that as a kind of a critical part of this because it's one thing if Joe Klock has potential liability and he is a partner of the firm, but it's another thing if he was actually acting for the firm in the representation at issue here, and, therefore, by extension does the firm have potential liability. It seems to me that that's probably the case, but it's obviously something that I would want to explore.

Bench Trial Tr. 10:7-14.

As a result of Magistrate Judge Hopkins' statements and apparent conclusion that there was a non-waivable conflict of interest, the trial was adjourned, with Magistrate Judge Hopkins requesting the parties to meet and confer on how to proceed. The parties did just that, and counsel for De Los Reyes informed counsel for HPC that his client wished to proceed with new counsel, and that counsel had never seen such remarks from a sitting judge regarding his partner – it was a first. Counsel for HPC then remarked that Magistrate Judge Hopkins had basically called Mr. Klock a criminal.

### Plaintiffs' Notice of Claim Against the Rasco Klock Firm

Plaintiffs, apparently following Magistrate Judge Hopkins' legal advice, have recently sent the Rasco Klock firm a notice of "a potential claim against Mr. Klock . . . for his actions in connection with the transfer of HPC's property interests to De Los Reyes Properties, LLC and its affiliates between December 2012 and September 2013.

## **LEGAL STANDARDS**

Recusal of federal judges is governed by 28 U.S.C. § 455, which provides, in subsection (a), that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court undertook a detailed analysis of the law and proper analysis in connection with Section 455(a). Setting out the applicable standard, the Court explained:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky*, 510 U.S. at 555 (1994). Thus, despite the general rule that rough handling of counsel or parties during a judicial proceeding are not normally grounds for recusal, a Section 455(a) disqualification motion will be granted if judicial remarks reveal ***"reveal such a high degree of favoritism or antagonism as to make fair judgment impossible***." *Id*. (emphasis added).

"The test for determining whether a judge's impartiality might reasonably be questioned is an objective one, and requires asking whether a disinterested observer fully informed of the facts would entertain a significant doubt as to the judge's impartiality." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 912 (11th Cir. 1998). This standard has been referred to by the courts as a "reasonable man" or "reasonable person" standard. *See United States v. Holland*, 655 F.2d 44, 47 (5th Cir. 1981) ("Applying this standard to the trial judge's conduct, we conclude that a reasonable man would be convinced that the trial judge's

impartiality might be questioned . . . The fact that these comments were made in a judicial context outside the presence of the jury does not prevent a finding of bias.").[9]

"Under section 455, a judge has a self-enforcing obligation to recuse himself where the proper legal grounds exist. Most important, the benefit of the doubt must be resolved in favor of recusal." *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001) (internal citations omitted). Further, the statute does not give a judge discretion as to whether to recuse himself. Rather, the statute tells the judge to disqualify herself if the public may perceive her, or her rulings, as being affected. *United States v. Kelly,* 888 F.2d at 744-45. Thus, "a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980)

The Eleventh Circuit has recognized four important features of the recusal analysis under Section 445(a): (1) judges are to resolve any doubts they may have in favor of recusal; (2) even the appearance of impropriety is to be avoided whenever possible; (3) no actual bias need be alleged or proved to satisfy the standard for recusal; and (4) there is no set procedural deadline for a Section 455(a) motion. *See Kelly*, 888 F.2d at 744-45. The court in *Kelly* reiterated that for purposes of Section 455(a), *no actual prejudice need be established*: "We need not speculate whether the judge in this case felt actual ill-will or prejudice toward Kelly. . . It is enough that the average lay person would have doubts about any judge's impartiality under these circumstances, regardless of what result was reached." *Id*. at 745.

---

[9] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981). *Holland* was decided in August 1981, and is thus binding precedent in the Eleventh Circuit.

**ARGUMENT**

I. **Magistrate Judge Hopkins's Statements Reveal a High Degree of Favoritism and Antagonism as to Make Fair Judgment Impossible, and Would Cause a Lay Observer to Entertain Significant Doubt About the His Impartiality**

From the perspective of a reasonable lay observer who is informed of all the surrounding circumstances, Magistrate Judge Hopkins's remarks during the first day of the bench trial reveal, in the words of *Liteky*, "a deep-seated favoritism or antagonism that would make fair judgment impossible." The standard that a fully informed and disinterested lay observer "would entertain a significant doubt about the judge's impartiality" is readily satisfied by the statements made by Magistrate Judge Hopkins prior to the commencement of the bench trial.

Magistrate Judge Hopkins overstepped his bounds when he suggested to Plaintiffs in open court that they explore filing a civil or criminal action against Mr. Klock. While Magistrate Judge Hopkins's intentions may well have been aimed in his mind to ensure that a conflict of interest did not exist, his statements have left the appearance that he has predetermined that the De Los Reyes Defendants and their former counsel engaged in fraudulent transactions with Mr. Wood, even though their knowledge of Dale Wood's authority, or lack thereof, was one of the material issues to be determined at the bench trial, a separate legal proceeding. Moreover, the Magistrate Judge has, in effect, stepped from the bench and become an advocate for a position originated by him and urged upon a litigant who had not even, apparently, thought about it.

Moreover, there is no evidence of any impropriety by Mr. Klock. Mr. Klock specifically testified that he did not have notice of, nor did he advise, Mr. De Los Reyes regarding, the corrective quit claim deed which was executed by Dale Wood on the date that the temporary restraining order was filed. With respect to the due diligence period, Mr. De Los Reyes has testified that he was informed that Dale Wood had authority to convey assets, and that he had

discussions with Mr. Hoffmann in this regard. If there is any doubt as to Mr. Wood's authority, the Court need only look at the fact that Mr. Wood signed the Letter of Intent with respect to Mr. De Los Reyes's acquisition of Plaintiffs' parent company. Due diligence was handled primarily by White & Case in Germany, yet Magistrate Judge Hopkins somehow singled out Mr. Klock as having some unspecified liability for actions taken by persons that were not clients of Mr. Klock or his firm.

A reasonable objective observer would conclude that Magistrate Judge Hopkins overstepped his bounds and displayed favoritism towards Plaintiffs when he provided legal advice and encouraged them to explore a civil or criminal claim against Mr. Klock. As admitted by Plaintiffs' counsel, a claim against Mr. Klock was not something that neither he nor Plaintiffs had in mind. Yet, Magistrate Judge Hopkins's statements encouraged Plaintiffs to "explore" a potential action against Mr. Klock.

The fact is that the De Los Reyes Defendants were going to prove that they were *bona fide* purchasers of property, without knowledge of any impropriety on behalf of Mr. Wood. However, Magistrate Judge Hopkins's statements have left the appearance of impartiality given that they would lead a reasonable observer to conclude that he has imported the jury's findings of fraud against Mr. Wood onto the De Los Reyes Defendants and has made a predetermined decision with respect to the outcome of this case.

## **CONCLUSION**

For all of the foregoing reasons, the De Los Reyes Defendants respectfully request that Magistrate Judge Hopkins be recused pursuant to 28 U.S.C. § 455(a).

**Dated**: March 7, 2016

                                                Joseph P. Klock, Jr. Esq., FBN 156678
jklock@rascoklock.com
Juan Carlos Antorcha, Esq., FBN 523305
jantorcha@rascoklock.com
Miguel A. Morel, Esq., FBN 89163
mmorel@rascoklock.com
**RASCO KLOCK PEREZ NIETO**
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Tel 305.476.7100
Fax 305.476.7102

By: /s/ *Joseph P. Klock, Jr.*
      Joseph P. Klock, Jr.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on March 7, 2016, I have filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel and parties of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                By: */s/ Miguel A. Morel*
                                                     Miguel A. Morel

**Via CM / ECF**
Richard L. Petrovich, Esq.
rlp@trippscott.com
Paul O. Lopez, Esq.
pol@trippscott.com
Megan L. Janes, Esq.
mlj@trippscott.com
TRIPP SCOTT, P.A
110 SE 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Tel 954-525-7500
Fax 954-761-8475

*Counsel for Plaintiffs*